[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties to this administrative appeal are the American Federation of State, County Municipal Employees, Council 4, Local 287, AFL-CIO (hereinafter the "Union"); the Connecticut State Board of Labor Relations (hereinafter "CSBLR") and the New Haven Board of Education (hereinafter "New Haven").
The Union, pursuant to the General Statutes § 7-467, et seq., Municipal Employees Relations Act (hereinafter "MERA"), was at all relevant times the exclusive collective bargaining representative of the supervisory employees of New Haven. New Haven is the employer of the supervisory CT Page 9950 employees represented by the Union. The CSBLR is an administrative agency of the State of Connecticut, Department of Labor authorized pursuant to General Statutes § 7-471 to enforce the MERA.
New Haven filed a complaint to the CSBLR on June 7, 1993 alleging the Union had violated the MERA. This complaint was amended on November 29, 1993 and resulted in contested evidentiary hearings before the CSBLR on November 30, 1993, and on February 17, May 2 and May 5, 1994. On January 17, 1996 the CSBLR issued its decision #3356 finding that the Union had violated the MERA. The decision directed the Union to withdraw certain issues from arbitration cases and pay New Haven's associated costs and expenses. The Union is thus aggrieved by the CSBLR decision.
This appeal was timely filed by the Union on February 21, 1996 pursuant to General Statutes § 4-183. The respondent CSBLR and New Haven have appeared and answered the petition.
The Record was filed on April 8, 1996. The briefs were filed by the Union on June 13, 1996, the CSBLR on July 12, 1996 and by New Haven on July 16, 1996.
The Union's brief is limited to the argument that based on the evidence in the record the CSBLR decision is clearly erroneous. All other issues raised in the appeal which were not briefed are viewed as abandoned. Collins v. Goldberg,28 Conn. App. 733, 738 (1992).
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183(j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." CT Page 9951Jutkowitz v. Department of Health Services, 220 Conn. 86, 94 (1991).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51, 57-58
(1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospitalof St. Raphael v. Commission on Hospitals Health Care,182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board of Education v. Freedomof Information Commission, 208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion."United Parcel Service, Inc. v. Administrator, UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
The facts of the case as found by the CSBLR are as follows.
In January 1990, the School Board eliminated a CT Page 9952 substantial amount of overtime that had previously been regularly performed by bargaining unit members. This overtime usually occurred in the schools when City sponsored night activities took place and bargaining unit members worked in the gymnasium or elsewhere on sporting activities.
As a result of the elimination of overtime, the Union filed twenty-seven grievances against the School Board during the period immediately following the overtime elimination. (Ex. 3 — 14A-N).
All twenty-seven grievances claim that the School Board did not have the right to eliminate the overtime of the bargaining unit members, citing violations of either Section 39 (Past Practice) or Section 27 (Overtime), of the collective bargaining agreement. In three of these grievances, this claim is the sole allegation. (Exs. 3, 5, 7 [Savo]).
Twenty-three of the grievances also claim that other bargaining unit members (usually the night shift custodians) performed work during their regular shifts, which work had traditionally been performed on an overtime basis. (Exs. 4, 6, 7 [Martino and Petrillo], 8, 9, 10, 11, 13, 14A-N). In certain of these twenty-three grievances, Section 29 (Night Activities) of the collective bargaining agreement is specifically referenced and in certain others, the allegation is merely stated without reference to a particular contract section. In four of the grievances (Exs. 4, 6, 7 [Martino and Petrillo]) the arbitration award also makes clear that the issue was raised.
One grievance specifically claims that non-bargaining unit personnel from the Parks and Recreation Department of the City of New Haven performed bargaining unit work. (Ex. 12). One other grievant claimed, at an arbitration hearing, that non-bargaining unit personnel were performing his work but did not clearly reference this claim in his written grievance. (Ex. 7 [Martino]).
Seven of the grievances proceeded to arbitration after which awards were issued, all in favor of the School Board. All the arbitration awards contain rulings that the School Board has the right to eliminate overtime. (Ex. 3-7). Two of the awards found that the Union had failed to prove that other bargaining unit members were performing the work. CT Page 9953 (Ex. 4, 6). One award, dealing with three grievants, warned the School Board not to allow non-bargaining unit employees to perform bargaining unit work, but found that there was no evidence to support such a claim. (Ex. 7).
Of the remaining twenty grievances, five were scheduled for arbitration hearings at the time of the Labor Board hearing, but no arbitration proceedings had taken place. (Exs. 8-12). One grievance had been heard in arbitration, but the arbitrator resigned prior to issuing an award, thus requiring another hearing. The re-hearing had not taken place at the time of the Labor Board hearing. (Ex. 13). The remaining fourteen grievances had all been heard in arbitration, but one member of the arbitration panel passed away prior to an award issuing. (Ex. 14A-N). These grievances must also be reheard, and the new arbitration had not taken place at the time of the Labor Board hearing.
Following the issuance of four of the arbitration awards discussed in finding of fact #11, the School Board's Attorney, Jay Bovilsky, wrote to Union Representative Joseph Lynch. (Ex. 2). In that letter, dated May 26, 1993, Bovilsky, on behalf of the School Board, requested the Union to "withdraw any and all pending grievances which challenge the Board's authority to eliminate overtime" because "the currently pending cases merely revisit this same issue of the Board's authority to eliminate overtime" and "the arbitration decisions issued to date make it clear that there is no good faith reason to continue to challenge the existence of this authority." (Ex. 2).
The Union did not respond to Bovilsky's letter and did not withdraw the grievances.
It is the established law that the court reviewing an administrative agency's decision pursuant to the Uniform Administrative Procedures Act 4-166 et seq., and specifically 4-183; may not retry the case or substitute its own judgment for that of the agency which heard the evidence. Greater Bridgeport Transit District, 232 Conn. 57, (1995); Buckley v. Muzeo, 200 Conn. 1, 3 (1986).
The factual findings are supported by extensive exhibits and testamentary evidence including; the individual grievances; arbitration awards; the Union's briefs in the CT Page 9954 arbitration cases; and extensive testimony. The test on appeal is not whether the Board could have decided the facts another way; but rather is there any substantive evidentiary basis for the findings. There clearly is substantive evidence for each of the CSBLR factual findings.
The Plaintiff also challenges the decision's conclusion that the Union repudiated the collective bargaining agreement.
The CSBLR is empowered to enforce the MERA through General Statutes § 7-473. Courts reviewing administrative actions of agencies interpreting the statutory scheme that they enforce, are directed to give deference to the agencies' construction. This has been expressly and repeatedly applied to the CSBLR. Board of Education v.CSBLR, 217 Conn. 110, 120 (1990); Lieberman v. CSBLR,216 Conn. 253, 263 (1990); Hartford Principals Supervisor'sAssn. v. Shedd, 202 Conn. 492, 503 (1987); CSBLR v. Board ofEducation, 77 Conn. 68, 74 (1979).
It has been long recognized by the CSBLR that the duty to bargain is violated by a refusal to carry out the term of a collective bargaining agreement. Trumbull Board ofEducation, Decision No. 1632 (1978); Derby Board ofEducation, Decision No. 1657 (1978); Norwich Board ofEducation, Decision 2505 (1986); Danbury Police Union,
Decision No. 2935 (1991); and Town of Plymouth, Decision No. 3361 (1996). This violation of the obligation to bargain in good faith by contract repudiation has been specifically found for the refusal to abide by a valid arbitration award.Ansonia Federation of Teachers, Decision No. 2570 (1987) andIAFF Local 944, Decision No. 3128 (1993).
The facts in this case establish a failure to abide by not one but several valid arbitration awards on the same elimination of overtime issue. The CSBLR conclusion that the Union repudiated the contract is supported by the substantial evidence in the record.
The CSBLR is directed under § 7-471(5) upon determining that a prohibited practice has been committed "shall take such affirmative action as will effectuate the policies" of the MERA. Certainly, such affirmative action may include ordering the payment of the victim's costs and expenses where there has been a finding of bad faith. CT Page 9955
The Union's appeal is dismissed.
McWeeney, J.