[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This administrative appeal raises the issue of whether a municipal police department was required to negotiate with a police union concerning the limited use of a surveillance camera in the investigation of the unauthorized dissemination of police department documents. The court affirms the board of labor relation's decision that this, subject is not a mandatory subject of bargaining.
The parties to this case are the International Brotherhood of Police Officers Local 316 (Union), the Town of Rocky Hill (Rocky Hill), and the Connecticut State Board of Labor Relations (Labor Board).
The plaintiffs Union and Rocky Hill are parties to a collective bargaining agreement for the uniformed police officers employed by Rocky Hill. The agreement was entered into pursuant to the Municipal Employees Relations Act (MERA), General Statutes § 7-467, et seq., which governs collective bargaining rights of municipal employees. The Labor Board is authorized pursuant to § 7-470 of MERA, to determine if unions and municipal employees have engaged in practices prohibited by MERA.
Municipal employees are prohibited from refusing to bargain collectively in good faith with a union which has been designated as an exclusive collective bargaining representative for a bargaining unit of employees.[1] The plaintiff Union is the designated exclusive bargaining representative for the police bargaining unit of Rocky Hill employees.
The Union, on January 7, 1994, filed a complaint with the Labor Board charging that Rocky Hill had violated MERA by installing and operating a surveillance camera in the work site without bargaining with the Union. The charge was submitted to the Labor Board, on July 28, 1997, on a full stipulation of facts. The Union and Rocky Hill submitted briefs and reply briefs. The Labor Board issued decision No. 3565 on January 9, 1998, dismissing the Union's complaint. The plaintiff filed this appeal on February 10, 1998. On the plaintiff's motion the court granted a stay of the Labor Board's order and expedited Superior Court proceedings. The answer and record were filed on March 2, 1998. Briefs were filed by the Union on April 6, 1998, and the CT Page 5861 Labor Board on April 27, 1998. Rocky Hill relied on the Labor Board's brief. The parties were heard in oral argument on April 30, 1998.
The underlying facts are as stipulated:
 3. In or about July, 1993, the Chief of the Town's Police Department and the Commander of the Police Department's Detective Division received information indicating that certain non-public police department records were being surreptitiously supplied to media representatives and other persons outside the department.
 4. The documents and information allegedly "leaked to the public and media had been located on top of and inside the desk of the Commanding Officer of the Detective Division. This desk was located near in [sic] the southwest corner of the room where the police departments Detective Division was located.
 5. The Town's Police Department and the Detective Division were located in the Rocky Hill Town Hall building.
 6. Town policy forbids the unauthorized dissemination of police department documents or information to members of the public and/or media.
 7. The police department's Detective Division was housed in a single room which was part of the Town police department. Any police department member or employee, including civilian employees, had unrestricted access to the Detective Division office whenever a detective was present in the police department. The door to the room housing the Rocky Hill Police Department Detective Division was usually locked at night, but all detectives, all sergeants, the records clerk, custodial employees, the Chief of Police and other command officers, the Town Manager, and other individuals, all had keys to the door.
 8. The Union represents all sworn Town police CT Page 5862 officers excepting only the Chief of Police. In addition to police officers represented by the Union, the following Town employees had access to the police department's Detective Division, often on an unrestricted or virtually unrestricted basis:
a. The Chief of Police
b. The Town Manager
 c. Clerical employees of the police department, who are represented for collective bargaining purposes by AFSCME, Council 4, a certified unit under the Act;
 d. Custodial and maintenance employees of the Town assigned to clean the Police Department, who are represented for collective bargaining purposes by the National Association of Government Employees, a certified unit under the Act;
 9. A preliminary criminal investigation was begun by the Police Department in an effort to determine who was responsible for "leaking" confidential police information and documents to the public and media.
 10. An internal personnel investigation was also begun by the Town since it seemed likely that disciplinary action might follow the identification of any Town employees as the source of the leaks.
 11. All police officers in the Detective Division were asked if they were responsible for or had information pertaining to the source of the information leaks. All denied any involvement or knowledge.
 12. Since the "leaked" information was traced to the Detective Division Commander's desk, the CT Page 5863 detective commander suggested to the Chief of Police that consideration be given to the installation of a hidden surveillance camera over the desk which would record any persons taking materials from the desk.
 13. The Chief of Police and the Detective Division Commander each contacted the Chief State's Attorney's [sic] for Hartford County to inquire about whether evidence obtained through the use of a hidden surveillance camera could be used in a criminal prosecution of the subject thus identified or whether the hidden surveillance camera would otherwise violate the law. The Chief State's Attorney informed the Chief of Police and the Defective Division Commander that evidence of unauthorized taking of police documents and information was legal and would be admissible in a subsequent criminal prosecution so long as the provisions of Sec. 31-48b of the Connecticut General Statutes were not violated. The Chief was also informed that no other statutes prohibited the use of hidden surveillance cameras in police investigations and that no search warrant was necessary in order to install a hidden surveillance camera in the Rocky Hill Police Department's Detective Division.
 14. On or about September 16, 1993, after speaking with the Chief State's Attorney, the Chief of Police approved the installation of a hidden "pinhole" surveillance camera in the ceiling directly above the detective commander's desk. The surveillance camera became operational on September 27, 1993, and was operated intermittently for less than one month, when the investigation was terminated. For security reasons, the existence and location of the camera was known only to the Chief, the Detective Division Commander, and the employees responsible for its installation. The surveillance of the desk, which was assigned to the Detective Division Commander for his business workplace was done with the advance knowledge and consent of the division commander. The camera installed captured images CT Page 5864 on film in an area limited to a top view of the Detective Division Commander's desk, extending outward only a short distance from the actual edges of the desk.
 15. The hidden surveillance camera recorded pictures only. The camera did not record any sounds. The Union does not contend that the limited use of the hidden surveillance camera over the detective commander's desk in this case violated the provisions of Section 31-48b, "An Act Regarding Limiting The Use of Electronic Surveillance Devices by Employers. Prohibition On Recording Negotiations Between Employers And Employees." Instead, the Union contends that even though the surveillance was lawful under the statute, the Act required the Town to negotiate with the Union before the camera was installed and made operational.
 16. As a result of the hidden surveillance camera, photographic evidence was developed which identified a member of the Rocky Hill Police Department as the person who was secretly inspecting and/or allegedly copying materials on top of and located in drawers of the detective division commander's desk. This evidence was used as part of the department's criminal investigation and its internal investigation into the allegations.
 17. Based in part on the evidence obtained from the hidden surveillance camera, the Town instituted disciplinary action against a police department member who belongs to the Local 316 bargaining unit. The Town decided not to formally press or pursue criminal charges against the same individual. The Union was granted access to the evidence obtained through the surveillance, but was not notified of the surveillance before hand.
 18. The Town did not provide advance notice to the police union (IBPO Local 316) of its plans to install and operate the hidden surveillance camera.
 19. The Town also did not offer and failed to CT Page 5865 negotiate with the police union (IBPO Local 316) under the Act over the installation and operation of the hidden surveillance camera.
 20. The Town did not provide advance notice to any of the other certified bargaining units (AFSCME and NAGE) of its plans to install and operate the hidden surveillance camera, although members of those other unions with access to the police department were considered as potential suspects when the camera was installed, and could have been disciplined as a result of the camera's use.
 21. The Town also did not offer to negotiate with any of the other two certified bargaining units whose members had access to the police department detective division and were considered as potential suspects when the camera was installed.
 22. The Union contends that the Town was required under the Act to negotiate pursuant to the Act over the decision to install and operate the hidden surveillance camera over the commander's desk in the detective division, prior to the decision to use the camera and prior to the installation and use of the camera.
 23. The Town contends that it was justified in its unilateral decision to install and operate the hidden surveillance camera without previously negotiating with the police union or any of the other unions whose members stood to face discipline as the result of the camera's usage.
(Return of Record, Decision, pp. 2-6.)
A basic principle of administrative law is that the scope of the court s review of an agency s decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or CT Page 5866 decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Departmentof Health Services, 220 Conn. 86, 94 (1991). "With regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public UtilityControl, 219 Conn. 51, 57-58 (1991).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion. United Parcel Service, Inc. v. Administrator,Unemployment Compensation Act, 209 Conn. 381, 385 (1988).
"Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies to expound and apply governing principles of law." (Citations and internal quotation marks omitted.)Connecticut Light Power Co. v. Texas-Ohio Power. Inc.,243 Conn. 635, 642-43 (1998). CT Page 5867
The standard for determining what constitutes a mandatory subject of negotiation was established in West Hartford EducationAssociation v. DeCourcey, 162 Conn. 566 (1972). This was recognized by the Labor Board at page 7 of its decision:
 As DeCourcey recognizes there is an area of overlap between what have traditionally been thought managerial functions and what concerns conditions of employment for the employees. In drawing the line within that area between those items that must be bargained over and those which the employer may act on without bargaining a balance must be struck. And in striking it the tribunal should consider, we believe the directness and the depth of the item's impingement on conditions of employment, on the one hand, and on the other hand, the extent of the employer's need for unilateral action without negotiation in order to serve or preserve an important policy decision committed by law to the employer's discretion.
(Citations omitted.)
The Labor Board's balancing test finds support not only inDeCourcey, supra, but in federal labor law as well, see, FirstNational Maintenance v. NLRB, supra, 452 U.S. 678. "Nonetheless, in view of an employer's need for unencumbered decision making, bargaining over management decisions that have a substantial impact on the continued availability of employment should be required only if the benefit, for labor-management relations and the collective bargaining process, outweighs the burden placed on the conduct of the business."
Plaintiffs rely on Colgate-Palmolive Co. v. Local 15, ICWU.AFL-CIO, 323 NLRB 82, 155 LRRM 1934 (1997); which found that the existence of surveillance cameras in the workplace was a mandatory subject of collective bargaining. The Labor Board, however, does not disagree with the holding in Colgate-Palmolive.
Rather, it factually distinguishes the case. In Colgate-Palmolive
the employer had initiated a widespread and ongoing system of surveillance cameras throughout the workplace. Rocky Hill used one camera which from the ceiling observed "an area limited to a top view of the Defective Division Commander's desk, extending outward only a short distance from the actual edges of the desk." CT Page 5868 (Finding of Fact 14.) It was in place for less than one month; being discontinued after the identification of a police department member allegedly inspecting and/or copying materials from the Commander's desk.
The instant case presents a situation of the very limited use of a surveillance camera for a discreet purpose. It does not involve the transformation of the work place by the widespread on-going implementation of surveillance cameras. The former scenario represents the employers field of unilateral action; the latter is subject to mandatory collective bargaining.
The appeal is dismissed.
Robert F. McWeeny, J.