## CHESTER KOLAKOWSKI *v.* NANCY HADLEY, COMMISSIONER OF MOTOR VEHICLES (14909)

Dupont, C. J., and Lavery and Glass, Js.

Argued September 17—officially released December 3, 1996

*Priscilla J. Green,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellant (defendant).

*Milo J. Altschuler,* for the appellee (plaintiff).

GLASS, J. The plaintiff, Chester Kolakowski, appealed to the Superior Court from the suspension of his motor vehicle operator's license by the defendant commissioner of motor vehicles (commissioner) pursuant to General Statutes § 14-227b,[1] the implied consent

[1] General Statutes § 14-227b provides in pertinent part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine and, if said person is a minor, his parent or parents or guardian shall also be deemed to have given his consent.

"(b) If any such person, having been placed under arrest for . . . operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege will be suspended in accordance with the provisions of this section if he refuses to submit to such test or if he submits to such test and the results of such test indicate that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight,

statute. The trial court sustained the plaintiff's appeal. On appeal to this court, the commissioner claims that the trial court improperly sustained the plaintiff's appeal because there is substantial evidence to support the commissioner's decision to suspend the plaintiff's

and that evidence of any such refusal shall be admissible in accordance with subsection (f) of section 14-227a and may be used against him in any criminal prosecution, refuses to submit to the designated test, the test shall not be given; provided, if the person refuses or is unable to submit to a blood test, the police officer shall designate the breath or urine test as the test to be taken. The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he refused to submit to such test or if he submitted to such test and the results of such test indicated that the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested refuses to submit to such test or analysis . . . the police officer, acting on behalf of the commissioner of motor vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period and shall issue a temporary operator's license . . . to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report together with a copy of the completed temporary license form, any operator's license taken into possession and a copy of the results of any chemical test or analysis to the department of motor vehicles within three business days. The report shall be made on a form approved by the commissioner of motor vehicles and shall be subscribed and sworn to under penalty of false statement as provided in section 53a-157b by the arresting officer. If the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal. The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for . . . operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that such person had refused to submit to such test or analysis when requested by such police officer to do so . . . .

"(d) Upon receipt of such report, the commissioner of motor vehicles shall suspend any license or nonresident operating privilege of such person effective as of a date certain, which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspen-

operator's license. We agree and reverse the judgment of the trial court.

The record discloses the following facts relevant to this appeal. At about 12:45 a.m. on February 18, 1994, Officers Jeffrey Bender and Gary Krassner of the Ansonia police department were stopped in the middle of Crescent Street with their vehicles facing in opposite directions. While they were stopped, a pickup truck drove up and stopped behind Krassner's vehicle. Krassner drove away and the truck followed. As the truck passed his vehicle, Bender recognized the driver as the plaintiff. Bender also noticed that the plaintiff was

sion. The commissioner shall send a suspension notice to such person informing such person that his operator's license or nonresident operating privilege is suspended as of a date certain and that he is entitled to a hearing prior to the effective date of the suspension and may schedule such hearing by contacting the department of motor vehicles not later than seven days after the date of mailing of such suspension notice. . . .

"(f) If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date shall be prior to the effective date of the suspension. . . . The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for manslaughter in the second degree with a motor vehicle or for assault in the second degree with a motor vehicle or for operating a motor vehicle while under the influence of intoxicating liquor or drug or both or while his ability to operate such motor vehicle was impaired by the consumption of intoxicating liquor; (2) was such person placed under arrest; (3) did such person refuse to submit to such test or analysis . . . and (4) was such person operating the motor vehicle. . . .

"(g) If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. If, after such hearing, the commissioner does not find on any one of the said issues in the negative . . . the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (h) of this section. . . .

"(h) The commissioner shall suspend the operator's license . . . of a person . . . against whom, after a hearing, the commissioner held pursuant to subsection (g) of this section, as of the effective date contained in the suspension notice or the date the commissioner renders his decision, whichever is later, for a period of . . . (3) two years if such person has two or more times previously had his operator's license . . . suspended under this section. . . ."

alone. Bender turned his vehicle around to follow the plaintiff because, as Bender testified, "I know [the plaintiff] had recently gone through another [driving while under the influence (DWI)] proceeding and I wanted to see if his license was under suspension or not . . . ." When the plaintiff reached the intersection of Crescent Street and Howard Avenue, he made a right turn onto Howard Avenue without signaling in violation of General Statutes § 14-242.[2] Bender continued to follow the plaintiff and activated the overhead lights of his police vehicle. The plaintiff continued driving until he reached his home on Howard Avenue, pulled into his driveway and turned off the lights and engine. Bender and Krassner drove their vehicles into the driveway behind the plaintiff's truck, walked up to the driver's side door and knocked on the window. The plaintiff opened the door and Bender asked for the plaintiff's operator's license, registration and insurance identification card. The plaintiff replied, in a slurred, mumbled voice, "I don't have a license."[3] Thereafter, the plaintiff exited his vehicle and, in response to Bender's inquiry, admitted to Bender that he had been drinking. In addition, the plaintiff denied that he had been driving the vehicle, even though he was the sole occupant and Bender had observed him driving. As he spoke with the plaintiff, Bender detected that the plaintiff had a strong odor of alcohol, that he spoke with slurred speech, that he had a "droopy expression," and that he walked with a severe stagger, running his hand along his truck to balance himself. The plaintiff refused to take any field sobriety tests and was placed under arrest for driving while under the influence of alcohol or drugs and making a turn at an intersection without giving an appropriate

---

[2] General Statutes § 14-242 (a) provides in pertinent part: "No person shall turn a vehicle at an intersection . . . without giving an appropriate signal . . . ."

[3] It was later determined, however, that the plaintiff did have a valid operator's license.

signal in violation of §§ 14-227b and 14-242, respectively.

At the police station, the plaintiff refused to submit to a test of his blood alcohol level. On the basis of Bender's report and the plaintiff's refusal to submit to a test, the commissioner sent a notice of the proposed suspension of the plaintiff's operator's license pursuant to § 14-227b (c) and (d). The plaintiff requested and was subsequently given an administrative hearing on the proposed two year license suspension pursuant to § 14-227b (f).

On March 30, 1994, a hearing was held before Jeffrey Donahue, a department of motor vehicles hearing officer. Bender's testimony, the "Officer's DWI Arrest and Alcohol Test Refusal or Failure Report" and an attached narrative report were admitted into evidence without objection. Donahue issued his decision on March 31, 1994, finding that (1) the police officer had probable cause to arrest the plaintiff for violating § 14-227b, (2) the plaintiff was placed under arrest, (3) the plaintiff refused to submit to a test to determine his blood alcohol level, and (4) the plaintiff was operating the motor vehicle. See General Statutes § 14-227b (f). On the basis of these findings, the commissioner suspended the plaintiff's driver's license pursuant to § 14-227b (h) (3), which provides that an operator's license is to be suspended for two years where such a driver has previously had his license suspended under § 14-227b on at least two other occasions.

The plaintiff appealed the suspension to the Superior Court, claiming that (1) Bender did not have a reasonable and articulable suspicion justifying a stop of the plaintiff's vehicle, and (2) Bender did not have probable cause to arrest the plaintiff. The trial court determined that, while the police officer's investigatory stop was justified because of the plaintiff's violation of § 14-242,

the record did not provide substantial evidence to support the hearing officer's finding that the police had probable cause to arrest the plaintiff. The court concluded, therefore, that the commissioner had acted unreasonably, arbitrarily and in abuse of his discretion. This appeal followed.

"In cases involving administrative appeals it is not the function of this court, nor was it the function of the trial court, to retry the case or to substitute its judgment for that of the administrative agency. . . ." (Citation omitted; internal quotation marks omitted.) *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 506, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). A reviewing court "shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions . . . (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . ." General Statutes § 4-183 (j). "If the [commissioner's] determination to suspend the plaintiff's license pursuant to § 14-227b is supported by substantial evidence in the record, that determination must be sustained." *O'Rourke* v. *Commissioner of Motor Vehicles*, supra, 507. It is, however, "the function of the courts to expound and apply governing principles of law. . . ." (Citations omitted; internal quotation marks omitted.) *Levinson* v. *Board of Chiropractic Examiners*, 211 Conn. 508, 521, 560 A.2d 403 (1989).

The commissioner asserts that the trial court improperly concluded that there was not substantial evidence in the record to support the hearing officer's decision that the police had probable cause to arrest the plaintiff

for driving while under the influence of intoxicating liquor. See General Statutes § 14-227b (f) (1).

"In Connecticut, probable cause is required before an arrest may be made for operating under the influence of alcohol." *State* v. *Stevens*, 26 Conn. App. 805, 810, 603 A.2d 1203, aff'd, 224 Conn. 730, 620 A.2d 789 (1992). Section 14-227b (c) requires a police officer to include in the incident report "the grounds for the officer's belief that there was probable cause to arrest . . . for operating a motor vehicle while under the influence of intoxicating liquor . . . ." Probable cause exists if there are "facts and circumstances within the officer's knowledge, and of which he has trustworthy information sufficient to justify the belief of a reasonable person that an offense has been or is being committed. *State* v. *Kaplan*, [20 Conn. App. 183, 187, 565 A.2d 11 (1989)], quoting *State* v. *Copeland*, [205 Conn. 201, 213, 530 A.2d 603 (1987)] . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Stevens*, supra, 811.

On the basis of the objective facts and circumstances as they were available to Bender that night, the trial court improperly found that the police did not have probable cause to arrest the plaintiff. The plaintiff failed to stop after Bender had activated the overhead lights on the police vehicle. Bender reported that the plaintiff's speech was slurred, and that he smelled of alcohol, staggered severely when he walked, and had a droopy expression. In addition, the plaintiff admitted that he had been drinking and denied driving the vehicle despite being its only occupant. These facts, in light of the plaintiff's refusal to submit to a blood alcohol test, are more than sufficient to establish probable cause.

We conclude that the record contains substantial evidence supporting the commissioner's finding that the police officer had probable cause to arrest the plaintiff for operation of a motor vehicle while under the influ-

ence of intoxicating liquor. Thus, the trial court improperly held that the commissioner acted unreasonably, arbitrarily and in abuse of its discretion.

The plaintiff argues, however, that even if we conclude, as we have, that the commissioner's decision was supported by substantial evidence, we can, nevertheless, affirm the trial court's decision on an alternate ground. See Practice Book § 4013 (a) (1).[4] Although the trial court concluded that the officer's investigative stop was justified, the plaintiff asserts that the police did not have a reasonable and articulable suspicion to justify stopping the plaintiff.

A brief investigatory detention by a police officer is proper, " 'even in the absence of probable cause, if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime.' " *State* v. *Harrison*, 30 Conn. App. 108, 111, 618 A.2d 1381 (1993), aff'd, 228 Conn. 758, 638 A.2d 601 (1994), quoting *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990). An investigative stop can be appropriate even where the police have not observed a violation because "a reasonable and articulable suspicion can arise from conduct that alone is not criminal." *State* v. *Harrison*, supra, 113.

Here, Bender observed the plaintiff make a right turn at an intersection without signaling in violation of § 14-242. This fact is sufficient, on its own, to justify an

---

[4] Practice Book § 4013 (a) (1) as it applied to the filing of the appellant's preliminary statement of the issues provides in pertinent part: "If any appellee wishes to (A) present for review alternate grounds upon which the judgment may be affirmed . . . that appellee shall file a preliminary statement of issues within fourteen days from the filing of the appellant's preliminary statement of the issues.

"Whenever the failure to identify an issue in a preliminary statement of issues prejudices an opposing party, the court may refuse to consider such issue." Effective September 3, 1996, § 4013 provides that the appellee shall file a preliminary statement of the issues within *twenty* days from the filing of the appellant's preliminary statement of the issues.

investigative stop. *Ivimey* v. *Watertown*, 30 Conn. App. 742, 750, 622 A.2d 603, cert. denied, 226 Conn. 902, 625 A.2d 1375 (1993). We conclude that the substantial rights of the plaintiff have not been prejudiced because the police officer had a reasonable and articulable suspicion that justified making an investigative stop.

The judgment is reversed and the case is remanded with direction to render judgment for the commissioner.

In this opinion the other judges concurred.