[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case concerns the challenge by a Doctor of Chiropractic to the two year revocation of his license to practice chiropractic. The respondents are various state officials acting as representatives of the State of Connecticut Department of Public Health, State Board of Chiropractic Examiners and Office of the Attorney General. All Defendants are represented by the same Assistant Attorney General.
General Statutes § 20-24 et seq. regulates the "practice of chiropractic." General Statutes § 20-27
prohibits the practice of chiropractic without a license. The State Board of Chiropractic Examiners (hereinafter "Examining Board") established pursuant to § 20-25 is empowered to issue as well as suspend or revoke licenses to practice chiropractic in this state.
Dr. Jutkowitz was licensed to practice chiropractic in Connecticut on March 22, 1990. The Examining Board, after a hearing on complaints against Dr. Jutkowitz, suspended his license for a period of one year. Dr. Jutkowitz appealed such suspension; see Jutkowitz v. Department of HealthServices, 220 Conn. 86 (1991). The suspension did not become effective until April 7, 1995.
On June 23, 1993, the Department of Public Health presented to the Examining Board a statement of charges against Dr. Jutkowitz; Dr. Jutkowitz was charged with CT Page 178 practicing chiropractic while his license to do so was under suspension. The Plaintiff denied such charges in a written response. The statement of charges was subject to a contested hearing before the Examining Board on August 17, and September 7, 1995. The Department of Health and the Plaintiff were represented by counsel at such hearings and were afforded the opportunity to present evidence and cross-examine all witnesses. The parties submitted post-hearing briefs.
The Examining Board issued a thirteen page decision dated April 11, 1996;[1] finding Plaintiff had practiced chiropractic while his license was suspended. The Plaintiff's license was revoked, with reinstatement to be considered only after a minimum of two years, and at the discretion of the Examining Board.
The Appeal was filed May 28, 1996. The Plaintiff's Motion for Stay of the Examining Board's Order was denied. The Record was filed on or about August 22, 1996. The briefs were filed on September 23 and October 24, 1996. Oral argument was held on December 18, 1996.
A basic principle of administrative law is that the scope of the court's review of an agency's decision is very limited. General Statutes § 4-183 (j) provides that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact . . . The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." In order to obtain reversal of an agency's decision, the Plaintiff must demonstrate that he suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v.Department of Health Services, 220 Conn. 86, 94 (1991). Also see Slimp v. Dept. of Liquor Control, 239 Conn. 599,604 (1996) and State v. State Employees' Review Board,239 Conn. 638, 645 (1996).
Furthermore, "Judicial review of conclusions of law reached administratively is also limited. The court's ultimate duty is only to decide whether, in light of the CT Page 179 evidence, the agency has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion." Conn. Light Power Co. v. Dept. of Public Utility Control, 219 Conn. 51,57-58 (1991). Similarly, "[w]ith regard to questions of fact, it is [not] the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency." Id. "The question is not whether the trial court would have reached the same conclusion but whether the record before the commission supports the action taken." Hospital of St. Raphael v. Commission on Hospitals Health Care, 182 Conn. 314, 318 (1980).
"Judicial review of [an administrative agency's] action is governed by the Uniform Administrative Procedure Act (General Statutes, c. 54, 4-166 through 4-189), and the scope of that review is very restricted . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [administrative agency] . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Citations and internal quotation marks omitted.) Board ofEducation v. Freedom of Information Commission,208 Conn. 442, 452 (1988).
Nevertheless, where "the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion.United Parcel Service, Inc. v. Administrator, UnemploymentCompensation Act, 209 Conn. 381, 385 (1988).
The Examining Board in its decision found the following facts:
 1. The Respondent is, and has been at all times referenced in the Statement of Charges, the holder of Connecticut Chiropractic License No. 000288. (Respondent's Answer). CT Page 180
 2. On March 22, 1990, the Board issued a Memorandum of Decision in Petition Number 850726-07-006 ("1990 MOD"), whereby the Respondent's license to practice chiropractic was suspended for a period of one year. This suspension became effective on April 7, 1995. (Respondent's Answer).
 3. Mr. Concezio DiNino and Ms. Sheri Jones are employed by the Department as investigators. They were assigned to investigate the possibility that the Respondent was practicing chiropractic after April 7, 1995. (Transcript 8/17/95 pp. 26-27, 131-132).
 4. Pursuant to his investigation, Mr. DiNino telephoned the Respondent's office to make an appointment with the Respondent. An answering machine answered his call. The male voice on the recorded message, identified as "Dr. Jutkowitz," told the caller to follow a serious of prompts to make an appointment. Mr. DiNino left a message that he wanted to see the Respondent on May 16, 1995. (Transcript 8/17/95 pp. 27-28).
 5. Subsequent to leaving the message, Mr. DiNino received a telephone call from a woman who stated she was calling from Respondent's office and wanted to verify Mr. DiNino's appointment with the Respondent. (Transcript 8/17/95 pp. 28-29, 120).
 6. On or about May 16, 1995, the following events occurred:
 a. Mr. DiNino, accompanied by Ms. Jones, went to the Respondent's office. (Transcript 8/17/95 29, 132).
 b. Once in the reception area of the office, Mr. DiNino was given a form to fill out with questions about his medical history and financial responsibility. (Department Exhibit 6; Transcript 8/17/95 29-31, 133).
c. Thereafter, a man identified by the CT Page 181 receptionist as "Dr. Jutkowitz," introduced himself to Mr. DiNino and Ms. Jones as "Dr. Jutkowitz." (Transcript 8/17/95 pp. 33, 135).
 d. Mr. DiNino, Ms. Jones and the Respondent went into an examining room. (Transcript 8/17/95 pp. 33, 44-45, 124, 135, 141).
 e. The Respondent reviewed the form Mr. DiNino had filled out and asked questions about his condition. The Respondent took notes. (Transcript 8/17/95 pp. 33-34, 126, 136).
 f. The Respondent conducted a physical examination:
 i. The Respondent felt along the right side of Mr. DiNino's spine, asking where Mr. DiNino felt pain. (Transcript 8/17/95 pp. 34, 98-99, 126, 136, 147).
 ii. The Respondent told Mr. DiNino to stand up and sit down again. (Transcript 8/17/95 pp. 37, 116, 118).
 iii. The Respondent pressed his hand on Mr. DiNino's right upper chest and asked Mr. DiNino if it hurt. (Transcript 8/17/95 pp. 35-36, 92, 137).
 g. While pressing his hand on Mr. DiNino's right upper chest, the Respondent struck the area with his closed fist. The Respondent told Mr. DiNino that he had performed an adjustment. (Transcript 8/17/95 pp. 35-36, 90-92, 99, 124-125, 127, 137-140, 147-150).
 h. The Respondent told Mr. DiNino that he wanted to take x-rays and start treating him. (Transcript 8/17/95 pp. 34-36, 123-124, 126-129, 137, 139-140, 162, 165).
 i. The Respondent explained his treatment process to Mr. DiNino. He stated that treatment CT Page 182 would take a number of sessions and he wanted Mr. DiNino to start treatment during that session. (Transcript 8/17/95 pp. 34-36, 46, 119, 123-124, 129).
 j. The Respondent told Mr. DiNino that he would be his doctor and would be treating him. (Transcript 8/17/95 pp. 34-35, 98).
 7. On or about May 30, 1995, the following events occurred:
 a. Mr. Martin Hardiman contacted the Respondent's office after seeing the name in the telephone book. An appointment was made. (Transcript 9/7/95 pp. 5-6).
 b. Mr. Hardiman went to the Respondent's office. Once in the reception area of the office, Mr. Hardiman was given a questionnaire which he filled out. (Respondent Exhibit C; Transcript 9/7/ 95 P. 6).
 c. Thereafter, a man who identified himself as "Dr. Jutkowitz," came into the reception area to speak with Mr. Hardiman. (Transcript 9/7/95 pp. 6-7).
 d. Mr. Hardiman was called to go into an examining room. The Respondent, the man who had identified himself as "Dr. Jutkowitz'" introduced Mr. Hardiman to a man identified as "Dr. Rosenbluth" and explained that Dr. Rosenbluth would be treating him. The Respondent never told Mr. Hardiman that his license was suspended. (Transcript 9/7/95 pp. 7-8, 15, 32).
 e. The Respondent did the following at this appointment:
 i. The Respondent asked Mr. Hardiman to bend over to see how far he could bend. (Transcript 9/7/95 pp. 12-13, 24, 38).
ii. The Respondent asked Mr. Hardiman where CT Page 183 the pain was in his back. (Transcript 9/7/95 pp. 13, 31, 38).
 iii. The Respondent recommended x-rays be taken. (Transcript 9/7/95 pp. 9, 21, 31-32).
 iv. The Respondent reviewed the x-rays with Dr. Rosenbluth. (Transcript 9/7/95 pp. 10, 32).
 v. The Respondent told Mr. Hardiman what his problem was. (Transcript 9/7/95 p. 10).
 vi. The Respondent and Dr. Rosenbluth conferred about what the treatment would be. (Transcript 9/7/95 p. 11).
 f. Dr. Rosenbluth did the following at this appointment:
 i. Dr. Rosenbluth took the x-rays. (Transcript 9/7/95 pp. 10, 32, 184).
 ii. Dr. Rosenbluth performed the treatment on Mr. Hardiman. (Transcript 9/7/95 pp. 11, 22, 25, 29, 38, 183-184).
 8. Thereafter, Mr. Hardiman returned to the office for three or four more treatments. (Transcript 9/7/95 pp. 15, 21, 183).
 9. Dr. Rosenbluth performed all the treatments on Mr. Hardiman. (Transcript 9/7/95 pp. 22, 25, 29, 183-184).
 10. An expert witness for the Department, Dr. Jude Lombardi, testified that the Respondent practiced chiropractic on Mr. DiNino on or about May 16, 1995, and on Mr. Hardiman on or about May 30, 1995. (Transcript 9/7/95 pp. 89-93).
 11. An expert witness for the Respondent, Dr. Brian Gross, testified that the Respondent did not practice chiropractic on either Mr. DiNino or Mr. Hardiman. (Transcript 9/7/95 pp. 210-258). CT Page 184
The Examining Board further found:
 Both Mr. DiNino and Mr. Hardiman were credible witnesses. The Board relied heavily upon their testimony when determining the facts in this case.
 The Board heard testimony from two expert witnesses, Dr. Jude Lombardi and Dr. Brian Gross, concerning whether the Respondent's conduct constituted the practice of chiropractic. Dr. Lombardi was a credible witness who testified that the Respondent's conduct with Mr. DiNino and Mr. Hardiman amounted to the practice of chiropractic. The Board, relying on its own expertise, came to the same conclusion.
"In cases involving administrative appeals it is not the function of . . . the trial court, to retry the case or to substitute its judgment for that of the agency. . . ." (Citations and internal quotation marks omitted.)Kolokowski v. Hadley, 43 Conn. App. 636, 642 (1996).
The "substantial evidence" rule governs judicial review of administrative decisions. "If the administrative record provides substantial evidence upon which the hearing officer could reasonably have based his finding . . . the decision must he upheld." Conn. Building Wrecking Co. v. Carrothers,218 Conn. 580, 601 (1991).
"In determining whether an administrative finding is supported by `substantial evidence,' a court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations and internal quotation marks omitted.)Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989).
There was substantial evidence in the form of the testimony of Mr. DiNino, Mr. Hardiman and Dr. Jude Lombardi; that the conduct of Dr. Jutkowitz towards Mr. DiNino on May 16, 1996, and Mr. Hardiman on or about May 30, 1996, constituted the practice of chiropractic.
The Examining Board specifically found DiNino, Hardiman CT Page 185 and Lombardi to be credible witnesses. They were free to accept Dr. Lombardi's characterization of such interaction as the practice of chiropractic, and reject the Plaintiff's expert's characterization that DiNino's treatment was "accupressure."
The findings are also consistent with the depiction of the practice of chiropractic set forth in § 20-24 (1).[2] A majority of the Examining Board were doctors of Chiropractic; thus they could rely, as they did, on their own expertise in determining if Jutkowitz practiced chiropractic while his license was suspended. Levinson v.Board of Chiropractic Examiners, 211 Conn. 508, 525 (1989).
The Plaintiff argues that other evidence considered was not dispositive. The evidence of telephone listings, advertising, speaking and writing on chiropractic was appropriately admitted because it was relevant to the charges. The substantial evidence relied on to prove the claim was the testimony of the persons treated and the characterization of such treatment by the State's expert.
Plaintiff also contests the absence of members of the Examining Board that decided the case from certain portions of the hearings. In this case "all board members involved in this decision attest that they have either heard the case or read the record in its entirety." This practice is acceptable in the context of an administrative hearing.Lewis v. Statewide Grievance Committee, 235 Conn. 693, 707
(1996).
The court may only reverse or modify the board's decision if substantial rights of the Plaintiff were prejudiced by a procedural irregularity; see General Statutes § 4-183 (g).
The Plaintiff's final claim relates to the penalty, a revocation of license for a minimum period of two years.
The Record contained an affidavit describing Dr. Jutkowitz's history of three disciplinary actions by the Examining Board; see Jutkowitz v. Department of PublicHealth, 220 Conn. 86 (1991); Jutkowitz v. Department ofHealth Services, 37 Conn. App. 904 (1995) and Jutkowitz v.Department of Health Services, Superior Court, judicial CT Page 186 district of Hartford-New Britain at Hartford, Docket No. 43936S (August 30, 1986).
An excessive penalty may constitute an abuse of discretion; Tucker v. Board of Education, 177 Conn. 572, 583
(1979). General Statutes § 4-183 (j)(6) establishes abuse of discretion as a grounds for a court overturning an administrative decision.
The practice of chiropractic in violation of General Statutes § 20-25, requiring a license to practice; carries a penalty under General Statutes § 20-33 of a fine of $500 or imprisonment of up to five years or both. The Plaintiff by practicing chiropractic while his license was suspended, thus engaged in felonious conduct. The imposition of a license revocation for a minimum of a two year period is within the Examining Board's purview pursuant to General Statutes §§ 19a-17, 20-25 and 20-29.
In this case the treatment in May of 1996, standing alone, justified the revocation for not less than two years. Considering the Plaintiff's disciplinary record which was before the Examining Board, made such action eminently reasonable.
The Plaintiff's appeal is dismissed.
Robert F. McWeeny, J.