[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this administrative appeal the Plaintiff, Attorney Kweku J. Hanson, appeals from a decision of the Defendant Statewide Grievance Committee reprimanding him for failing to have a written fee agreement in violation of Rule 1.5(b) of the Rules of Professional Conduct.
The appeal is taken pursuant to Section 27N of the Connecticut Practice book. Section 27n(d) provides that such an appeal shall be conducted by the court without a jury and shall be confined to the record. In reviewing the decision of the Statewide Grievance Committee the trial court does not take the function of a factfinder. Pinsky v.CT Page 187-AStatewide Grievance Committee, 216 Conn. 228, 234 (1990). "Rather, our role is limited to reviewing the record to determine if the facts as found are supported by the evidence contained within the record and whether the conclusions that follow are legally and logically correct." (Internal quotation marks and citations omitted.) Weiss v.Statewide Grievance Committee, 227 Conn. 802, 812 (1993).
Rule of Professional Conduct 1.5(b) provides in pertinent part: "When the lawyer has not regularly represented the client, the basis or rate of the fee, whether and to what extent the client will be responsible for any court costs and expenses of litigation, and the scope of the matter to be undertaken shall be communicated to the client, in writing, before or within a reasonable time after commencing the representation." The "Comment" to this rule indicates: "Absent extraordinary circumstances the lawyer should send the written fee statement to the client before any substantial services are rendered, but in any event not later than ten days after commencing the representation.[1]
The facts as found by the committee and evidenced in the Record are substantially as follows. In early 1995, Mr. Dezroy R. Stewart contacted the Plaintiff telephonically regarding an immigration issue. The Plaintiff had never previously represented CT Page 187-B Mr. Stewart. The telephone calls were followed by an initial meeting at the Plaintiff's home on March 3 or 4, 1995. The Plaintiff and Mr. Stewart discussed his immigration problems for more than one hour. The Plaintiff quoted Mr. Stewart a flat fee of $6,000 for self sponsored and/or employer sponsored visa and permanent resident status application process. Mr. Stewart left some documents with Plaintiff, and was provided a sixteen page questionnaire to complete and return. A retainer of $2,000 was discussed; by an immediate $1,800 check and a $200 check the following week. The Plaintiff advised Mr. Stewart that he would be very busy for the next week and would send him a written fee agreement. Mr. Stewart reconsidered his decision to retain Plaintiff and on Monday, March 6, 1995, stopped payment on the $1,800 check. Mr. Stewart left messages for the Plaintiff to not deposit the check. The Plaintiff responded with a message that he would sue for his fee. The Plaintiff by March 6, had spent five or six hours on Stewart's matter.
The Plaintiff and Mr. Stewart on March 7, 1995, by means of a telephone conversation, resolved to proceed as originally agreed on March 4, 1995. Mr. Stewart unsuccessfully attempted to release the stop payment order on the check. The Plaintiff continued to work on the file for an additional three hours on March 8 and 10, 1995. The Plaintiff learned of the stop payment and return of the CT Page 187-C $1,800 check on March 14, 1995.
Plaintiff telephoned Mr. Stewart on March 14 or 15, 1995 to demand payment and threaten legal action. Plaintiff wrote Mr. Stewart on March 16, 1995, reviewing their relationship and indicating he has suspended work on the file until paid $2,000 no later than March 18, 1995. On March 17, 1995 Mr. Stewart terminated the relationship and retrieved his file from Plaintiff. Plaintiff submitted a letter to Stewart dated March 17, 1995 along with an invoice for $1,035 and threat of litigation.[2]
The Plaintiff's invoice to Stewart reflects the commencement of services on March 3, 1995. The hours spent are reflected as March 3, 3.95 hours; March 4, .40 hours; March 8, 1.85 hours; March 10, 1.05 hours; March 15, .40 hours and March 16-17, .30 hours. The Plaintiff billed for a total of 10.35 hours.
The Plaintiff at a hearing before the Reviewing Committee of the Statewide Grievance Committee on October 4, 1995 admitted that he never had a fee agreement with Mr. Stewart. (R. T., p. 20.) The Defendant found that the Plaintiff had rendered substantial services.
The Plaintiff did argue extraordinary circumstances but the CT Page 187-D ability to work hours on the file refutes the alleged time constraints to issue a fee letter.
The Plaintiff did not claim that his March 16, 1995 letter is a fee letter under Rule 1.5(b) at the hearing, in his brief or at oral argument. His position is that there was no fee writing but that none was required under the circumstances.
Plaintiff's appeal raises at least seventeen specific issues in a broadside attack on the Committee's factual findings, procedure, alleged bias and application of the rule.
The facts are not substantially in dispute. Taking the facts as set forth in Plaintiff's letters to Stewart of March 16 and 17, 1995; we have a period from March 3 to March 17, 1995 without a fee letter. Plaintiff by his own statement did over ten hours of work. The services did not involve any appearances or filings of an emergency nature. The services rendered were in the nature of research, drafting a memo and discussions with the client.
The "Comment" to Rule 1.5(b) suggests that the written fee agreement "in any event" should be sent "not later than ten days after commencing the representation." Certainly on March 3, 1995 the representation commenced with 1.25 hours of client conference and 2.70 hours of research. This was also accompanied by an CT Page 187-E $1,800 retainer check. The representation by clear and convincing evidence commenced on March 3, 1995 and continued until at least March 16, 1995; without a written fee agreement.
The Uniform Administrative Procedures Act does not apply to the Committee's action, but the same principles as to scope of review are applicable. Pinsky v. Statewide GrievanceCommittee, 216 Conn. 228, 334 (1990); Weiss v.Statewide Grievance Committee, supra, 227 Conn. at 811. "In cases involving administrative appeals it is not the function of . . . the trial court, to retry the case or to substitute its judgment for that of the agency. . . ." (Citations and internal quotation marks omitted.) Kolakowski v. Hadley,43 Conn. App. 636, 642 (1996). Also see Prucker v. StatewideGrievance Committee, Judicial District of Hartford-New Britain at Hartford, CV90-0541436 (Maloney, J., June 9, 1995).
The Plaintiff's procedural complaints relate to Stewart's extraneous comments, and reference to prior grievances against Plaintiff which were dismissed; lack of time at the hearing; the Reviewing Committee's refusal to listen to an audiotape of a March 8, 1995 conversation, and the Reviewing Committee membership.
Plaintiff did not object to Stewart's testimony at the CT Page 187-F hearing or the decision to close the record. "[T]he failure to raise a procedural claim or the failure to utilize a remedy available to cure a procedural defect can constitute a waiver of the right to object to the alleged defect. Levinson v. Boardof Chiropractic Examiners, 211 Conn. 508, 536 (1989);Welch v. Zoning Board of Appeals, 158 Conn. 208, 213-14
(1969).
The Reviewing Committee hearing was attended by two of the three Committee members. This constituted a quorum under the Statewide Grievance Committee Rule 7F. This reviewing committee, procedure was implicitly approved in Lewis v. StatewideGrievance Committee, 235 Conn. 693, 706-708 (1996). Plaintiff also failed to object to the Review Committee proceeding in this fashion, thus again waiving this claim.Dragan v. Medical Examining Board, 233 Conn. 618,629-632 (1992).
In order to obtain reversal of an agency's decision, the Plaintiff must demonstrate that he suffered "material prejudice as the result of this alleged procedural deficiency."Jutkowitz v. Department of Health Services,220 Conn. 86, 94 (1991).
The audiotape was excluded from evidence on the basis that CT Page 187-G the Reviewing Committee accepted Plaintiff's representation of it's contents and found it irrelevant. The Plaintiff asserted that the tape would reflect Stewart seeking for Plaintiff to continue to work on his case, on March 8, 1995; which is consistent with the findings, and irrelevant to the issues.
The Plaintiff asserts a claim of bias or discrimination. There is a presumption that adjudications are unbiased.Clisham v. Board of Police Commissioners,223 Conn. 354, 362 (1992). This rule is in accordance with the general presumption that public officials are presumed to have done their duty until the contrary appears. Leib v. Board of Examinersfor Nursing, 177 Conn. 78, 84 (1979). "A presumption of impartiality attends administrative determinations, and the burden of establishing a disqualifying interest on the part of an adjudication rests upon the one seeking disqualification.Rado v. Board of Education, 216 Conn. 541, 556 (1990). Plaintiff cites nothing in the Record to support his claims of bias or discrimination.
The Plaintiff res judicata claim regarding his small claims judgment fails as a matter of law. In re Application ofPagano, 207 Conn. 336, 340 (1988). The Statewide Grievance Committee not being a party to the small claims case. Also seeWeiss v. Statewide Grievance Committee, supra, at CT Page 187-H221 Conn. 818-19.
The court is not without sympathy for the Plaintiff as Stewart was certainly duplicitous in his dealings with the Plaintiff. However, contrary to the Plaintiff's assertion, Rule 1.5(b) does not mandate a finding of bad faith by Plaintiff, see Statewide Grievance Committee v. Presnick,18 Conn. App. 316, 322 (1989). It is clearly a mandatory requirement even if the lawyer has failed to minimally comply by inadvertence.
Plaintiff's appeal is dismissed.
Robert F. McWeeny, J.