[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals from the decision of the Connecticut Board of Examiners for Nursing ("Board") revoking her license to practice nursing in the State of Connecticut. The appeal is filed pursuant to the Uniform Administrative Procedures Act (UAPA), General Statutes §§ 4-166, et seq., 4-183.
Plaintiff contests the existence of substantial evidence in the record which would support the Board's finding and conclusions. In addition the plaintiff asserts that the Board failed to meet its obligation to conduct a thorough investigation of the matter. The court disagrees.
The plaintiff was notified by the Board on November 17, 1994, of its intent to conduct a hearing into allegations of violations of General Statutes § 20-99 (b)(2) and (6). The Board held hearings on the charges on September 27, 1995, November 15, 1995, February 7, 1996, March 20, 1996, and May 8, 1996. The Board's final decision found that on numerous occasions in January, November, and December 1992, the plaintiff diverted Percocet, a controlled substance as defined in General Statutes § 21a-240
(9), failed to document medical records and falsified controlled substance receipt records. The plaintiff's license was revoked effective November 1, 1996.
Plaintiff's filed this appeal on October 23, 1996. The license revocation was stayed by court order of October 31, 1996. The answer and record were filed on December 2, 1996. Briefs were filed by the plaintiff on February 14, 1997, and the Board on May 23, 1997. The parties were heard at oral argument on October 21, 1997.
The plaintiff is aggrieved by the Board decision revoking her nursing license.
In support of her procedural claim, plaintiff citesAdriani v. CHRO, 220 Conn. 307 (1991). This case holds that the limited substantial evidence standard of review used by the trial court in assessing administrative appeals "is conditional upon the [agency] having conducted a thorough investigation of the claim and having relied only upon reliable, probative evidence in making those findings." Id., 319.
Adriani is distinguishable from this case in that it did not involve a hearing. In Adriani there was an CT Page 13484 administrative dismissal of an employment discrimination case after a finding of no reasonable cause to believe that discriminatory practice had been committed. This occurred prior to any hearing under General Statutes § 46a-83.
Here, unlike the complainant in Adriani, the plaintiff was afforded a full evidentiary due process hearing where she had the benefit of legal counsel, sworn testimony, cross examination of witnesses, the opportunity to testify and the opportunity to call witnesses. Thus, the steps the Board took before bringing the complaint against plaintiff are less critical to an assessment of procedural claims. "[T]he procedure which the UAPA requires for `contested cases' . . . exceed the minimal procedural safeguards mandated by the due process clause."Levinson v. Board of Chiropractic Examiners,211 Conn. 508, 531 (1988).
Plaintiff's procedural claim is essentially that the patients, their doctors and other nurses should have been interviewed concerning the Percocet issues. In that plaintiff was afforded a full hearing during which she could have called such persons as witnesses, she is not aggrieved by any irregularity in not interviewing potential witnesses. In order to obtain reversal of an agency's decision, the plaintiff must demonstrate that she suffered "material prejudice as a result of this alleged procedural deficiency." Jutkowitz v. Department of HealthServices, 220 Conn. 86, 94 (1991). Also see, State v.State Employees Review Board, 239 Conn. 638, 645 (1996); andSlimp v. Dept. of Liquor Control, 239 Conn. 599, 604
(1996). "In administrative appeals, we have held that the failure to utilize a remedy available to cure a defect deprives a complainant of the right to object to the alleged defect.Dragan v. Connecticut Medical Examining Board,223 Conn. 618, 631 (1992)." Pet v. Department of Health Services,228 Conn. 651, 664 (1994). The plaintiff was not denied her procedural rights of due process of law and administrative fairness. See, Grimes v. Conservation Commission,243 Conn. 266, 273 (1997).
The plaintiff's claims with respect to the evidentiary support for the Board's decision are determined by application of the substantial evidence rule.
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial CT Page 13485 evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Citations and internal quotation marks.)Dolgner v. Alander, 237 Conn. 272, 280 (1996).
"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. General Statutes § 4-183 (j) (5) and (6). An administrative finding is supported by substantial evidence if the record affords a I substantial basis of fact from which the fact in issue can be reasonably inferred. The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency. . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action." (Citations and internal quotation marks omitted; footnote omitted.)Dolgner v. Alander, supra, 237 Conn. 281. Substantial evidence "is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." (Citations and internal quotation marks omitted.) Id.
The findings of fact by the Board which are pertinent to the revocation of plaintiff's nursing license are found in pages 3-5 of the decision:
 5. Beginning on or about 1973, the Respondent was employed at New Britain General Hospital, New Britain, Connecticut. The Respondent was initially employed as a licensed practical nurse and subsequently a registered nurse. Beginning on or about 1984 the Respondent worked in the capacity of an Assistant Nurse Manager on the 11:00 PM-7 AM shift of the Postpartum Unit. (Hearing Transcripts, November 15, 1995, pp. 19-20; February 7, 1996, p. 32; May 8, 1996, pp. 15, 50-51, 102)
 6. On numerous occasions during January, November, and December 1992, while working on the Postpartum Unit of New Britain General Hospital, the CT Page 13486 Respondent signed out doses of the controlled substance Percocet on controlled substance proof of use sheets indicating that said doses had been administered to patients. The Respondent, however, did not make corresponding entries in patient medication administration records and/or nursing narrative notes indicating that said medications were in fact administered to patients. (Department Exhibit 3B-3V) (Hearing Transcript, November 15, 1995, pp. 33-39).
 7. On numerous occasions during January and November 1992, while working on the Postpartum Unit of New Britain General Hospital, the Respondent signed out doses of the controlled substance Percocet on controlled substance proof of use sheets indicating that said doses had been administered to patients. The times of administration of said doses as documented by the Respondent in patient medication administration records and/or nursing narrative notes do not correspond to the times the Respondent charted on the controlled substance proof of use sheets. (Department Exhibit 3B) (Hearing Transcripts, November 15, 1995, pp. 43-44)
 8. During the months of January, November, and December 1992, the Respondent's frequency of signing out doses of Percocet on controlled substance proof of use sheets, on the Postpartum Unit of New Britain General Hospital, was greater than that of the other nurses working on the unit. (Hearing Transcripts, November 15, 1995, pp. 42-43; February 7, 1996, p. 26)
 9. The medical records of patients for whom the Respondent signed out doses of Percocet on controlled substance proof of use sheets during January, November, and December 1992 were reviewed. The review determined that the patients, for whom the Respondent signed out doses of Percocet but failed to properly document medication administration in corresponding nursing notes and/or medication administration records, did not show the effects of having been administered Percocet in the frequency signed out CT Page 13487 by the Respondent. (Hearing Transcript, February 7, 1996, p. 3-4, 20-22; March 20, 1996, pp. 22, 24, 26-28)
 10. During 1992 the Respondent had knowledge of the proper procedures for documenting medication administrations. (Hearing Transcript, May 8, 1996, pp. 79-83)
 11. Percocet was supplied in blister packs to the Postpartum unit of New Britain General Hospital by the hospital's pharmacy. (Hearing Transcript, May 8, 1996, pp. 93-95)
 12. The change of shift controlled substance counts on the Postpartum unit of New Britain General Hospital during January, November, and December 1992 corresponded to the balances on controlled substance proof of use sheets. (Hearing Transcript, February 7, 1992, pp. 34-35
 13. On or about 1992, the New Britain Connecticut Police Department conducted an investigation into allegations that the Respondent's husband, Philip Sahadi, was selling prescription drugs from a hot dog cart in New Britain, Connecticut. (Department Exhibit 5) (Hearing Transcript, March 20, 1996, pp. 122-123)
 14. On or about October 8, 1992, at the request of the New Britain, Connecticut Police Department, a confidential informant purchased Percocet from the Respondent's husband. An examination of the Percocet tablets revealed chips and/or cuts indicative of the tablets being removed from blister packs. (Department Exhibit 5) (Hearing Transcript, March 20, 1996, p. 123)
A review of the record references in the findings establishes that the record contains substantial evidence to support each of such findings.
Plaintiff cites other evidence which does not support the adverse finding. However, "In determining whether an administrative finding is supported by `substantial evidence,' a CT Page 13488 court must defer to the agency's right to believe or disbelieve the evidence presented by any witness, even an expert, in whole or in part." (Citations and internal quotation marks omitted.)Briggs v. State Employees Retirement Commission,210 Conn. 214, 217 (1989). "In cases involving administrative appeals it is not the function of. . . the trial court to retry the case or substitute its judgment for that of the administrative agency. . . ." (Citations and internal quotation marks omitted.)Kolakowski v. Hadley, 43 Conn. App. 636, 642 (1996).
It was reasonable and logical for the Board to conclude from its factual findings that the plaintiff diverted Percocet by signing it out other than for the purpose of administration to a patient, falsified controlled substance receipt records and failed to document medical or hospital records. Such conduct constituted clear violations of § 20-99 (b)(2) and (6).
The plaintiff's final argument is the alleged excessive nature of the penalty of license revocation.
An excessive penalty may constitute an abuse of discretion;Tucker v. Board of Education, 177 Conn. 572, 583 (1979). Section 4-183 (j)(6) establishes abuse of discretion as a ground for a court overturning an administrative decision.
Our legislature in § 20-99a has specifically empowered the Board to revoke nursing licenses for violations of §20-99 (b). Plaintiff's conduct pursuant to § 21a-255 could have resulted in criminal sanctions.
Unquestionably the diversion of a controlled substance, falsification of controlled substance receipt records and the failure to document hospital or medical records are gross violations of the standards of the nursing profession. General Statutes § 20-99. See Graham v. Dept. of HealthServices, Superior Court judicial district of Hartford/New Britain at Hartford, Docket No. 365959 (August 13, 1990). In this case the violations were of a continuing nature (January, November and December, 1992) and by an experienced nurse.
The unanimous decision of the Board which is comprised of a majority of nurses regarding a discretionary disciplinary decision should not be easily disturbed by the reviewing court. The standard of judicial review requires that "an agency's factual and discretionary determinations are to be accorded CT Page 13489 considerable weight by the courts." Board of Aldermen v.Bridgeport Antennae Television Co., 168 Conn. 294, 298-99
(1975); Connecticut Hospital Assn., Inc. v. Commission onHospital and Health Care, 200 Conn. 133, 140 (1986);State Medical Society v. Board of Examiners inPodiatry, 208 Conn. 709, 777 (1988).
The decision is supported by substantial evidence in the record; made after lawful procedure and does not involve a clearly excessive penalty.
The appeal is dismissed.
Robert F. McWeeny, J.