[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, Charles Nobs, Maurice Lucas, Ben Raphan and Myrna Raphan, bring this appeal from a final decision of the defendant, Connecticut Siting Council ("Siting Council"), approving an application by the defendant, Cellco Partnership doing business as Bell Atlantic Mobile ("Cellco"), for a certificate of environmental compatibility and public need ("certificate") to construct, maintain and operate a wireless telecommunications facility located in the city of Stamford, Connecticut. The plaintiff's appeal is authorized pursuant to General Statutes § 16-50q and General Statutes §§ 4-166 et seq. and 4-183 of the Uniform Administrative Procedure Act ("UAPA").
In addition to the Siting Council and Cellco, additional defendants are other users of the wireless telecommunications tower including Sprint Spectrum, LP doing business as Sprint PCS ("Sprint"), Nextel Communications of the Mid-Atlantic, Inc. doing business as Nextel Communications ("Nextel"), and Springwich Cellular Limited Partnership ("Springwich").
Included within the responsibilities of the Siting Council pursuant to General Statutes § 16-50j et seq. is the obligation to review and issue a certificate of environmental compatibility and public need with respect to the construction, operation, maintenance of telecommunication towers, equipment buildings, and associated equipment for the provision of cellular telephone service within the State of Connecticut.
Wireless telephones work by transmitting a low power signal between a wireless telephone and a personal wireless service facility, commonly known as a "cell site," which consists of antennas mounted on a tower, tall building or similar tall structure. Radio frequency principles and network design require a number of cell sites. The network functions by having the caller signal "handed off" to a cell site in an adjacent area as it moves out of coverage of a cell site, with a goal of providing seamless and continuous mobile telephone service throughout the wireless service providers' licensed area. Cellco and the other defendants other than the Council are licensed providers of wireless telephone service in the Stamford, Connecticut area. Cellco identified the need for an additional cell site in the Riverbank area of North Stamford near the Merritt Parkway. Cellco identified significant coverage holes in this area which interfered with wireless telephone communication. Commencing in October of 1996, Cellco met with the mayor of Stamford and a representative of the city's land use bureau, health safety and welfare department and environmental health department about the need for an additional facility in the Riverbank area. CT Page 4667
Cellco conducted a search for alternate site locations in the Riverbank area. Cellco evaluated twelve alternative locations for the construction of a new facility and for existing towers in and around the Riverbank area. (Return of Record (ROR), Item XIV, Findings of Fact, p. 3, ¶¶ 19-22.)
On November 17, 1997, Cellco applied to the Siting Council for a certificate of environmental compatibility and public need for the cell site in the Riverbank section of Stamford. The application identified a proposed prime site and two alternate sites, alternate 1 and alternate 2, for location of the tower and related equipment. The proposed prime site and alternate 1 site are located on the same twenty-eight acre parcel of land located on Guinea Road in Stamford, Connecticut. The alternate 2 site is located within an approximately 5.9 acre parcel of land at 141 Den Road, Stamford. The plaintiffs' own land abutting the Guinea Road prime and alternate 1 sites. The plaintiffs were provided with notice pursuant to General Statutes § 16-501 (b). The plaintiffs were parties to the proceedings before the Siting Council on Cellco's application. Sprint, Nextel and Springwich were admitted as intervenors in the proceedings before the council. Sprint, Nextel and Springwich proposed locating antennas on the proposed prime cell site.[1]
The three alternate sites set forth in Cellco's application were required by the Siting Council's regulations. Regs., Conn. State Agencies § 16-50j-74 (j).
The prime site was located approximately 300 feet north of the Merritt Parkway right of way and 900 feet south of the nearest residential structure to the north. The prime site is located more than 1000 feet to the southwest of the home owned by the plaintiff Charles Nobs. The prime site involved the construction of 160 foot monopole tower in a single story L-shaped equipment building to house radio equipment for Cellco, Springwich, Nextel and Sprint.
The first alternate site consisted of a 10,000 square foot leased area located in the southeasterly corner of the same parcel, approximately 80 feet west of Guinea Road. It would have been located approximately 200 feet from the nearest residence, east of Guinea Road and approximately 500 feet from the home of the plaintiff Charles Nobs. The alternate 1 site would have also involved the construction of a 160 foot monopole tower and a single story L-shaped equipment building.
The second alternate site would have consisted of a 10,000 square foot leased area located in the southeasterly portion of a 5.8 acre CT Page 4668 parcel on the east side of Den Road owned by the Russian Orthodox Church. This site would have required the construction of a 170 foot monopole tower and L-shaped single story equipment building.
The Council commenced public hearing on the application on January 6, 1998 at the West Hill High School in Stamford, Connecticut. On April 2, 1998 the Siting Council issued its findings of fact, opinion, decision and order approving the proposed prime site.
On May 15, 1998, the plaintiff filed an appeal from the decision and order of the Siting Council, which was the final decision for purposes of the UAPA. General Statutes § 16-50q provides that appeals from decisions of the Siting Council are brought "in accordance with the provisions of section 4-183." Section 4-183 is the Uniform Administrative Procedure Act appeal provision.
Following the closing of the record and approval of the application, pursuant to Siting Council regulations, Cellco submitted detailed site plans and tower foundation plans for the site. This development and management plan ("D M plan") was approved by the Siting Council on September 1, 1998. The D M plan provided a tower height of 160 feet and the attachment of pertinent structures extending slightly above the 160 foot tower.
In their appeal, the plaintiffs claim that the Siting Council's decision is: (1) an excess of its statutory authority; (2) clearly erroneous in view of reliable, probative and substantial evidence on the whole record; or (3) arbitrary, capricious or characterized by an abusive discretion or a clearly unwarranted exercise of discretion.
At the outset, the court notes the "standard of review for all of the plaintiff's claims on appeal. Because [the court is] reviewing the decision of an administrative agency, [the court's] review is highly deferential. . . . Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . ." CT Page 4669 (Citations omitted; internal quotation marks omitted.) Bezzini v.Dept. of Social Services, 49 Conn. App. 432, 436 (1998).
General Statutes § 16-50p of the Public Utility and Environmental Standards Act sets forth the criteria for council decisions and certificate proceedings such as are at issue in this case: "[T]he council shall not grant a certificate . . . unless it shall find and determine: (1) A public need for the facility and the basis of the need; (2) the nature of the probable environmental impact, including a specification of every significant adverse effect, whether alone or cumulatively with other effects, on, and conflict with the policies of the state concerning, the natural environment, ecological balance, public health and safety, scenic, historic and recreational values, forests and parks, air and water purity and fish and wildlife; (3) why the adverse effects or conflicts referred to in subdivision (2) of this subsection are not sufficient reason to deny the application. . . ."
The Siting Council in the findings of fact, which underlie its decision, includes specific findings with respect to the "need" criteria. It notes the strong public policy with respect to the promotion and encouragement of wireless telecommunication services. (ROR, Item XIV, Findings of Fact, pp. 1-2, ¶¶ 6-11.) The Findings of Fact ¶¶ 12-18 specifically address the cellular system design used by the defendants. The coverage gaps within the area, specifically in the Riverbank area of Stamford, are due to the hilly topography of that area. The existing facilities do not provide adequate coverage in these gap areas.
The court's "review of an agency's factual determination is constrained by. General Statutes § 4-183(j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court . . . to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial CT Page 4670 scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency's] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) NewEngland Cable Television Assn., Inc. v. DPUC, 247 Conn. 95. 117-18 (1998).
The Siting Council findings of fact with respect to the "need" criteria are supported by substantial evidence in the record.
The Siting Council's findings of facts in their decision after an extensive review of the prime site and the two alternate sites deals extensively with environmental considerations. (ROR, Item XIV, Findings of Fact, pp. 7-9, ¶¶ 53-61.) The decision notes the absence of populations of federal or state endangered, threatened or species of special concern occurring at the sites. (ROR, Item XIV, Findings of Fact, pp. 7, ¶ 53.) The Connecticut Historical Commission stated that none of the proposed tower sites would have a significant impact on site lines to bridges or other designs of the Merritt Parkway. (ROR, Item XIV, Findings of Fact, pp. 7, ¶ 54.) The Historical Commission is of the opinion that the sites would have no adverse effect on cultural resources. (ROR, Item XIV, Findings of Fact, pp. 7, ¶ 54.) The Siting Council considered the number of trees required to be removed, the fill in cubic yards required for the construction and the controls with the Connecticut guidelines for soil erosion and sediment control. (ROR, Item XIV, Findings of Fact, pp. 8, ¶ 59.) The findings of fact also note the Federal Aviation Administration's determination that the tower would not create a hazard to air navigation. (ROR, Item XIV, Findings of Fact, p. 8, ¶ 59.) The compliance with the Federal Communications Commission and American National Standards Institute regulations was also considered. (ROR, Item XIV, Findings of Fact, p. 8, ¶ 60.) The durability of the monopole towers was also considered. (ROR, Item XIV, Findings of Fact, p. 8, ¶ 61.)
The Council has considered the nature of the probable environmental impact as required by statute and its findings of fact are supported by substantial evidence in the record.
In accordance with its factual findings and consideration of environmental impact, the Siting Council determined that the environmental effects associated with the construction of the prime site monopole tower were not sufficient reason to deny the application.
The Siting Council specifically considered the criticisms from the environmental council of Stamford and from the environmental planner CT Page 4671 for the Stamford Environmental Protection Board. The Siting Council noted: "In responding to some of the concerns expressed by members of the public and the Environmental Council of Stamford, we find the prime site to be protective of public health and consistent with a regional plan for development of wireless facilities along a highway corridor." (ROR, Item XIV, Opinion p. 2.)
The Council's decision and order aptly sums up the process followed in the resolution of the issues entrusted to its discretion:
 Pursuant to the foregoing Findings of Fact and Opinion, the Connecticut Siting Council (Council) finds that the effects associated with the construction, operation, and maintenance of a telecommunications tower and equipment buildings at the proposed prime site in Stamford, Connecticut, including effects on the natural environment; ecological integrity and balance; public health and safety; scenic, historic, and recreational values; forest and parks; air and water purity; and fish and wildlife are not disproportionate either alone or cumulatively with other effects when compared to need, are not in conflict with the policies of the State concerning such effects, and are not sufficient reason to deny the application and therefore directs that a Certificate of Environmental Compatibility and Public Need, as provided by General Statutes § 16-50k, be issued to Bell Atlantic Mobile (BAM) for the construction, operation, and maintenance of a telecommunications tower, associated equipment, and buildings at the proposed prime site, located within a 28-acre parcel at Guinea Road, Stamford, Connecticut. We find the effects on scenic resources and adjacent land uses of the first alternate site and second alternate site to be significant, therefore deny certification of these sites.
(ROR, Item XIV, Decision and Order, p. 1.)
The above cited decision is, in accordance with Siting Council's authority, supported by substantial evidence on the whole record and represents an appropriate exercise of the Siting Council's discretion.
It would violate the limited function of the trial court in hearing an administrative appeal to substitute its judgment for that of the agency. Kolokowski v. Hadley, 43 Conn. App. 636, 642 (1996). This is especially the case whereas here the Siting Council is exercising discretion which is specifically provided the Siting Council under CT Page 4672 the statutory direction of the legislature. The plaintiffs are essentially seeking a re-trial of the hearing and the substitution of the court's judgment for that of the agency. The legislature would not have created the Siting Council and set forth the criteria for its duties if it intended that the court would undertake a de novo consideration of the issues.
The plaintiffs have also sought to raise in this appeal, the issue of the Cellco Development and Management Plan which was required by the decision. The plaintiffs assert that the tower with attached platforms will measure 163 feet in height. This is not inconsistent with the application which indicates that the tower structure will not exceed 160 feet. It is apparent from the application that antennas pertinent to the structure, will exceed the height of the tower structure. In any event, the development and management plan was not part of the contested hearing and final decision from which the plaintiffs' appeal lies under the UAPA.
The decision of the Council is affirmed and the appeal is dismissed.
 ___________________, J. Robert F. McWeeny